CAPITAL PRINTING CO. v. CLYDE R. HOEY and others, Joint Committee on Printing; EDWARDS & BROUGHTON, and E. M. UZZELL; and CYRUS THOMPSON, Secretary of State.

(Decided May 13, 1899).

*Public Printing—Contract—Mandamus—Injunction.*

The acceptance by the joint committee of both Houses of the General Assembly on Public Printing of a bid by the lowest responsible bidder, does not become a contract for the public printing for the State until the necessary details, along with the prices, are incorporated in a written contract—the Act of Assembly requiring that the Committee should have the agreement reduced to writing. Until written and executed the contract is incomplete.

APPLICATION for mandamus and injunctive relief made to *Brown, J.,* at Chambers in Raleigh, during April Term, 1899, of WAKE Superior Court.

The complaint alleged that the plaintiff was the lowest bidder for the Public Printing; that his bid had been accepted and bond approved by joint committee of both houses, but that they had refused to put the contract in writing according to the terms of the agreement—and claiming to act under legislative authority had transferred the contract for the Public Printing to Edwards & Broughton and Uzzell, and that the Secretary of State would not recognize the contract made with plaintiff. The mandamus was asked to compel the Committee on Printing to execute a written contract for the Public Printing with the plaintiff and to compel the Secretary of State to turn over to him the laws, journals and public documents to be printed. The injunction was asked against the other defendants to enjoin them from proceeding with the public printing. The defendants demurred *ore*

*tenus* to the jurisdiction of the Court, and on the ground that the complaint did not state a cause of action.

His Honor sustained the demurrer and dismissed the case. Plaintiffs excepted and appealed.

*Messrs. A. J. Field* and *Battle & Mordecai,* for plaintiff. (appellant).

*Mr. J. N. Holding,* for defendant Legislative Committee.

*Messrs. Womack & Hayes,* for defendants Edwards & Broughton.

*Mr. Armistead Jones,* for defendant E. M. Uzzell.

MONTGOMERY, J., delivers the opinion of the Court.

CLARK, J., delivers concurring opinion.

MONTGOMERY, J.  This is an application made by the plaintiff company for writs of mandumus against those of the defendants who are alleged to be members of the Joint Committee on Printing of the General Assembly of 1899, to compel them to execute a written contract with the plaintiff in accordance with an alleged agreement with the plaintiff and that Committee, by which the plaintiff was to do the public printing for the State, and against the Secretary of State, who is also a defendant, to compel him to deliver the copies and manuscripts of Laws, Journals, Documents and other matter to be printed by the State, to the plaintiff as Public Printer.  Injunctive relief was asked against the other defendants, Edwards & Broughton and E. M. Uzzell.  All of the defendants answered, and then, all except the Secretary of State demurred *ore tenus* to the complaint, on the ground that the complaint did not state a cause of action against Edwards & Broughton and Uzzell, and that the Court was without jurisdiction as to the other defendants, as the proceeding was against the State of North Carolina, and could

not be maintained on that account. His Honor sustained the demurrer and dismissed the proceeding, and from the judgment the plaintiff appealed.

The facts stated in the complaint are to be taken as true— the effect of the demurrer. From the complaint it appears that by an Act ratified on the 24th of January, 1899, those of the defendants who were appointed ·a joint committee on printing were directed on the part of the State to execute and deliver a contract for the public printing and binding. The first, second, third, fourth and fifth Sections of the Act, are in the following words:

"SEC. 1. The joint committee on printing are directed on the part of the State, to make, execute and deliver a contract for the public printing and binding at not more than the following rates: For every one thousand ems of plain composition, 30 cents; for every one thousand ems of rule and figure work, 60 cents; for every token of two hundred and forty impressions of press work, 20 cents; for law sheep binding, 45 cents per volume of 600 pages; for half binding, 20 cents per volume of 600 pages; for every 48 pages over 600, one cent per volume. The contract, however, shall be made with the person whose bid shall require payment from the State of the least amount of money on account thereof. The necessary freight and other expense to be incurred by accepting any proposition for the public printing shall be taken into consideration, so that the work may be done and the printed matter be delivered for distribution in the city of Raleigh at the lowest price obtainable from a responsible bidder. The said committee shall have the right to reject any bid, if in its opinion the same is not made by responsible parties, and in awarding the said contract, regard shall be had to the character of the work to be done, and of the quality of the material to be used, in passing on the responsibility of the bidder:

124—49

*Provided* the contract shall be let to a person or firm in the State of North Carolina. And for all job printing and binding ordered by the State Departments and the subdepartments thereof, the usual customary rate charged by printers for such work, to be approved by the Commissioner of Labor and Printing as hereinafter provided for.

SEC. 2. The parties to whom the said committee may award the public printing and binding shall give bond, with approved security payable to the State of North Carolina in the sum of five thousand dollars, conditioned for the faithful performance of his duties and undertakings under said contract, and under this Act the surety or sureties herein required, shall justify before some person authorized to administer oaths.

SEC. 3. Each bill for printing shall be charged by the "quad em" and "token," and the binding per volume; and before being paid for by the State, shall be examined and approved by the "Commissioner of Labor and Printing," who shall impartially examine said printing and binding, and determine both the manner of its execution and the correctness of its accounts rendered for the same.

SEC. 4. The Public Printer may select such quality and quantity of paper as may be necessary for doing the public printing, which requisition shall be approved by said "Commissioner of Labor and Printing," and upon such requisition it shall be the duty of Secretary of State to purchase said paper and turn the same over to the public printer, taking his receipt for the same.

Section six of the Act contains a proviso as follows: *"Provided,* That when printing the reports of State officers and State institutions, the public printer shall print of said reports the number of copies necessary for binding in the public documents, and for the copies required for public documents said printer shall be paid in addition to the press work,

only for changing heads and folios of said reports, such amount as said Commissioner of Labor and Printing shall allow therefor."

Under the Act of Assembly, the Committee met on the day after the ratification of the Act to receive bids on the public printing, when Edwards & Broughton, Nash Bros., E. M. Uzzell and the plaintiff company appeared and handed in their bids to the committee, and the bids were opened in the presence of the bidders and their respective attorneys. It was conceded then and there by all the bidders that the bid of the plaintiff was the lowest bid and was as follows: "For plain composition, per 1,000 ems twenty cents; for rule and figure work, per 1,000 ems forty cents; for every token of 240 impressions of press work, eleven cents; for law sheep binding, per volume of 600 pages, thirty-five cents; for half binding, per volume of 600 pages, fourteen cents; for binding every 48 pages over 600, per volume, one-fourth of one cent; for all other work the prices named in the Act."

The bid of Edwards & Broughton was at the prices named in the Act as maximum.

The particulars of the acceptance of the plaintiff's bid appear in the seventh, eighth, and ninth allegations of the complaint, as follows:"

7. That afterwards, to-wit, on February 28, 1899, said Joint Committee met for the purpose of passing on the responsibility of plaintiff, and after hearing evidence and examining samples of work done by plaintiff, found as a fact that plaintiff was responsible, and approved its bond for $5,000, with the surety thereon, which was tendered by plaintiff; and said Joint Committee, then and there by a vote accepted pliantiff's said bid and awarded to plaintiff the contract for said public printing, pursuant to the terms of said Act, and in accordance with its said bid.

8. That thereupon said Joint Committee appointed M. H. Justice, Clyde R. Hoey and S. M. Gattis as a sub-committee to reduce to writing said contract made as aforesaid between the State of North Carolina and plaintiff.

9. That at the time said contract was let to plaintiff as aforesaid, Edwards & Broughton, who had been theretofore doing the public printing temporarily, had in their hands certain matter to be printed for the House of Representatives, which they promptly returned without printing; that the same was at once given to plaintiff by the proper officers of the House, and other matter to be printed for both the House and the Senate was sent to plaintiff by the proper officers of those bodies; and plaintiff was instructed by Clyde R. Hoey, Chairman of the House branch of said Joint Committee, to do said printing, and he stated that he wished the bill to be rendered therefor to be in accordance with the terms of plaintiff's said contract with the State, and plaintiff did do said printing accordingly.

An attorney at law was selected by the Committee to prepare the contract and after it was prepared the plaintiff refused to sign it, alleging that it was unjust, unreasonable, and not in accordance with the plaintiff's accepted bid and the requirements of the Act of Assembly. The contract prepared is as follows:

"This agreement, made and entered into this the seventh day of March, one thousand eight hundred and ninety-nine, by and between the State of North Carolina, through the joint Committee on Printing of the General Assembly, of the one part, said Committee being thereto duly authorized by law, and the Capital Printing Company, a corporation, of the other part.

Witnesseth: That the said Capital Printing Company hereby undertakes and agrees, upon the terms and conditions

named in this contract, and at the prices hereinafter set forth, or provided for, accurately, promptly, and in good time, and in a first class, workmanlike manner, to do all the public printing, binding, job work, and all other similar work required and allowed by law to be done during the said term of one year, ten months and fifteen days from the date of this contract, by the said State of North Carolina and for all the departments and sub-departments, and the penal and charitable institutions thereof, and to deliver the same in the city of Raleigh to the proper officers or departments, without cost of freight, expressage, drayage, or charges of any kind to said State, other than those set forth or provided for in this contract;

And in consideration thereof, the said State of North Carolina, through said joint Committee on printing, agrees that, upon the conditions named in this contract, and at the prices hereinafter set out or provided for, all printing, binding, job work and all other similar work required and allowed by law to be done during said term of one year, ten months and fifteen days from the date of this contract, for said State and its departments, sub-departments and penal and charitable institutions, shall be done by the said Capital Printing Company, and the same shall be paid for at the prices hereinafter named or provided for, and none other, and in the manner herein named and provided for; which said prices shall constitute the entire compensation of said Capital Printing Company, for doing all printing, binding, job work, and all other work necessary to be done by law or by the terms of this contract in connection with the public printing, including all cutting and trimming of paper, wrapping, packing and otherwise handling and distributing any and all of said work before and after the same is done up to the delivery thereof as provided for in this contract, to the proper officers or departments.

It is understood and agreed that all bills against the State for said printing shall be made out and charged by the "quad em" and "token," except those for the job work, which shall be made out and charged as hereinafter specially set forth, and those for the binding shall be made out and charged per volume; and said bills, and all other bills for work done under the provisions of this contract, before being audited and paid, shall be approved by the Commissioner of Labor and Printing of said State, who shall, before approval, impartially examine the printing, binding and other work, and determine both the manner of its execution, and the correctness of the accounts rendered for the same; and if said Commissioner of Labor and Printing shall ascertain that any of said printing or binding, or other work done under the provisions of this contract are not done in the manner required by law, or called for by this contract, then he may reject the same, and decline to approve said bills or accounts; or, in lieu of complete rejection, he may deduct from said bills or accounts such sum as he shall deem just and proper to be deducted therefrom for such failure.

Said Capital Printing Company, in printing the reports of the State officers and of the various State departments, and penal and charitable institutions, shall print of said reports the number of copies necessary for binding in the public documents, making the necessary changes in the heads and folios of said reports, and for the copies so required for the public documents, said Capital Printing Company shall be paid, in addition to the press work, only for changing the heads and folios aforesaid such amount as said Commissioner of Labor and Printing may allow therefor.

Said State of North Carolina shall furnish and deliver to said Capital Printing Company, at its place of business in the City of Raleigh, free of cost and expense, all paper of

every kind (that for binding excepted) needed for use in doing the public printing and job work aforesaid.

Said Capital Printing Company shall furnish, free of cost to the State, except the prices allowed for binding, all material of every kind needed for use in doing all the binding called for by this contract.

Said Capital Printing Company shall make to said Commissioner of Labor and Printing each quarter during the term of this contract, commencing April 1, 1899, a written report, showing the amount of each quality and kind of paper that has been used during the preceding quarter in doing the public printing, and the amount of each quality and kind that may be on hand at the time of making such report.

Said Capital Printing Company agrees to receive, store and properly care for, free of cost to said State, and honestly and faithfully use and account for, all paper and material of every kind, valuable manuscripts, books, original copies, and all other articles and things of value that may be delivered to it for use in doing any of the public printing or other work provided for in this contract, and to promptly return such manuscripts, books, original copies, and other articles or things of value to the proper officers or departments of said State, or of its penal or charitable institutions; and, at the termination of this contract, to promptly and faithfully account for and turn over to the proper authorities aforesaid all paper, materials of every kind, valuable manuscripts, original copies, books and other articles or things of value that may be on hand, and belonging to said State, or to any of its said departments or institutions.

It is understood and agreed that in printing the Supreme Court Reports, the said Capital Printing Company shall print, bind and deliver the said reports to the Secretary of State within ninety days from the time the manuscripts, or

original copies of such reports are turned over to said Printing Company for printing; and for failure to so deliver there shall be deducted by the Commissioner of Labor and Printing from the bills or accounts of said company rendered for said work the sum of twenty-five dollars per day for each and every day's delay after said ninety days, which said sum is hereby agreed upon and stipulated and fixed as liquidated damages, in lieu of all actual damages, and for all inconveniences and annoyance that may be caused by such delay.

It is further understood and agreed that said Capital Printing Company shall have all the copies of the Laws, Documents and Journals printed and bound (which are required to be bound under this contract, or by law) and delivered to the Secretary of State within ninety days after the adjournment of the present session of the General Assembly, and for failure to do so there shall be deducted by said Commissioner of Labor and Printing from the bills or accounts rendered by said company for said work the sum of fifty dollars for each and every day's delay thereafter, which said sum is hereby agreed upon and stipulated and fixed as liquidated damages, in lieu of all actual damages and for all inconveniences and annoyance caused by such delay.

The prices agreed upon and fixed, or otherwise provided for in this contract for doing said printing and other work are as follows:

For every one thousand ems of plain composition, twenty cents; for every one thousand ems of rule and figure work, forty cents; for every token of two hundred and forty impressions of eight pages of press work, eleven cents; for law sheep binding, thirty-five cents per volume of six hundred pages; for half binding fourteen cents per volume of six hundred pages; for every forty-eight pages over six hundred in said volume, one-fourth of one cent per volume. And it is understood that the foregoing prices apply only to the following classes of

work, to-wit: To the composition and press work and binding of the Public and Private Laws, Documents, Journals, Supreme Court Reports, pamphlets of all kinds, including all copies, for circulation of such laws as are required or allowed by law to be sent out and circulated, and the reports of all officers of the State and of the various departments, and the penal and charitable institutions thereof. All other printing and press work and other similar work called for by the provisions of this contract are hereby classed and fixed as job work, and shall be charged and paid for as follows: The charges for setting type for each and every job of such work shall be computed at thirty-two (32) cents per hour for the time taken by the compositor in setting or arranging said job, and the time to be allowed the said compisitor in doing said work shall be on the basis of the actual time in which a first-class journeyman printer could do said work in doing honest, faithful and prompt work, which said price of thirty-two cents shall also pay for the distribution of said work. The press work on all of said job work shall be charged for at the rate of forty-four cents for each one thousand impressions.

For doing any other kinds of job work, the prices for which are not herein specified, the amount to be charged and allowed therefor shall be at the usual customary rates charged by printers for such work, to be approved by said Commissioner of Labor and Printing as required by law.

It is further understood that whenever one or more duplicates of any job work can and may be printed at the same impression, the charges for the press work thereon shall be computed at eleven cents per token for each two hundred and forty sheets run through the press.

It is particularly understood and agreed that all printing done under the provisions of this contract is to be done with type of standard size and face to insure first-class work, as may be designated by the head of each department, sub-

department, penal and charitable institution, except as herein specifically called for.    The Senate and House Journals and documents, (except tabular or rule and figure work) are to be set in leaded small pica type, each page to be twenty-three pica ems wide, and forty-two pica ems long, including head and foot lines.

The text of the public and private laws is to be set in leaded brevier type, each page to be twenty-two pica ems wide and forty-three pica ems long, and the side notes to be set in nonpareil type, five pica ems wide, and separated from the text by a three-to-pica lead.

The text of the Supreme Court Reports (not reprint) is to be set in leaded small pica type, and the index and syllabus thereof to be set in leaded brevier, the width and length of the pages to be the same as those of the reports printed during the past two years.

It is further understood and agreed that, in addition to all the provisions and requirements of this contract, the said Capital Printing Company is to do and perform all acts and things, duties and obligations required by law to be done and performed in connection with said public printing, and in the manner and form required by law, and that the said Commissioner of Labor and Printing shall have not only such power, authority and jurisdiction as are herein provided for, but also such as are given him by law. In witness whereof, etc.

The plaintiff then offered a contract containing what was alleged to be the terms of the contract agreed on with the committee, but they refused to sign it.    The plaintiff being desirous of avoiding a controversy offered another contract by way of compromise, and it was rejected by the committee. The contract was as follows:

"This agreement made and entered into this the 7th day of

March, 1899, by and between the State of North Carolina, through the Joint Committee on Printing of the General Assembly, of the one part, said committee being thereunto duly authorized by law, and the Capital Printing Company, a corporation, of the other part, witnesseth:

"That the said Capital Printing Company hereby undertakes and agrees upon the terms and conditions named in this contract and at the prices hereinafter set forth or provided for, accurately, promptly and in good time, and in a first-class workmanlike manner, to do all of the public printing, binding, job work, and all other similar work required and allowed by law to be done during the term of one year, ten months and fifteen days from the date of this contract by the State of North Carolina, and for the departments and sub-departments, and the penal and charitable institutions thereof; and to deliver the same in the city of Raleigh to the proper officers or departments without cost of freight, expressage, drayage, or charges of any kind, to the said State, other than those set forth or provided for in this contract.

"And in consideration thereof the said State of North Carolina, through said Joint Committee on Printing, agrees that upon the conditions named in this contract, and at the prices hereinafter set out or provided for, all printing, binding, job work, and all other similar work required and allowed by law to be done during the said term of one year, ten months and fifteen days, from the date of this contract for said State, its departments, sub-departments and penal and charitable institutions, shall be done by the said Capital Printing Company, and the same shall be paid for at the prices hereinafter named and provided for and none other, and in the manner hereinafter named and provided for, which said prices shall constitute the entire compensation of the said Capital Printing Company for doing all printing, binding, job work, and all

other work necessary to be done by law, or by the terms of this contract, in connection with the public printing, including all cutting and trimming of paper used by said Capital Printing Company, wrapping, packing and otherwise handling all of said work from the time of its delivery to said Capital Printing Company up to and including its delivery to the proper officers or department in the city of Raleigh.

"It is understood and agreed that all bills against the State for said printing shall be made out and charged by the "quad em" and "token," except those for the job work which shall be made out and charged as hereinafter specially set forth, and those for the binding shall be made out and charged per volume; and said bills, and all other bills for work done under the provisions of this contract, before being audited and paid, shall be approved by the Commissioner of Labor and Printing of said State, who shall, before approval, impartially examine the printing, binding and other work, and determine both the manner of its execution and the correctness of the accounts rendered for the same; and if said Commissioner of Labor and Printing shall ascertain that any of said printing or binding, or other work done under the provisions of this contract, are not done in the manner required by law or called for by this contract, then he may reject the same and decline to approve said bills or accounts; or, in lieu of complete rejection, he may deduct from said bills or accounts such sum or sums as he shall deem just and proper to be deducted therefrom for such failure.

"Said Capital Printing Company, in printing the reports of the State officers and of the various State departments and penal and charitable institutions, shall print of said reports the number of copies necessary for binding in the public documents, making the necessary changes in the heads and folios of said reports, and for the copies so required for the public

documents, said Capital Printing Company shall be paid, in addition to the press work, only for changing the heads and folios aforesaid, such amount as the said Commissioner of Labor and Printing may allow therefor.

"Said State of North Carolina shall furnish and deliver to said Capital Printing Company at its place of business in the city of Raleigh, free of cost or expense, all paper of every kind (that for binding excepted) needed for use in doing the public printing and job work aforesaid.

"Said Capital Printing Company shall furnish free of cost to the State, except the prices allowed for binding, all material of every kind needed for use in doing all binding called for in this contract.

"Said Capital Printing Company, once a quarter, shall furnish a written report showing the amount of each quality and kind of paper that has been used since the last report in doing the public printing, and the amount of each quality and kind that may be on hand at the time of making such report.

"Said Capital Printing Company agrees to receive, store and properly care for as needed, free of cost to the said State, and to honestly and faithfuly use and care for all paper and material of every kind, valuable manuscripts, books, original copies, and all other articles and things of value which may be delivered to it for use in doing any of the public printing, or other work provided for in this contract, and to promptly return such manuscripts, books, original copies, and other articles or things of value, to the proper officers or departments of said State, or the said penal and charitable institutions; and at the termination of this contract to promptly and faithfully account for, and turn over to the proper authorities aforesaid, all paper, material of every kind, valuable manuscripts, original copies, books and other articles or things of value, that may be on hand and belonging to said State, or to any of its departments or institutions.

CAPITAL PRINTING CO. v. HOEY et. als.

"It is understood and agreed that in printing the Supreme Court Reports, the said Capital Printing Company shall print, bind and deliver the said reports to the Secretary of State within ninety days from the time the manuscripts or original copies of such reports are turned over to said Capital Printing Company for printing; and for failure to deliver, there shall be deducted by the Commissioner of Labor and Printing from the bills or accounts of said company rendered for said work, the sum of twenty-five dollars per day for each and every day's delay after said ninety days, which said sum is hereby agreed upon and stipulated and fixed as liquidated damages, in lieu of all actual damages, and for all inconvenience and annoyance that may be caused by such delay.

"It is further understood and agreed that said Capital Printing Company shall begin the delivery of the public laws within three months after the final adjournment of the General Assembly, and shall complete the delivery of the public laws, private laws, documents and journals within five months from the final adjournment of the General Assembly, and for failure to do so there shall be deducted by said Commissioner of Labor and Printing from the bills or accounts rendered by said company for said work, the sum of fifty dollars for each and every day's delay thereafter.

"The prices agreed upon and fixed or otherwise provided for in this contract for doing said printing and other work, are as follows:

"For every one thousand ems of plain composition, twenty cents; for every one thousand ems of rule and figure work, forty cents; for every token of two hundred and forty impressions of eight book pages of press work, eleven cents; for law sheep binding, thirty-five cents per vol. of six hundred pages; for half binding, fourteen cents per volume of six hundred pages; for every forty-eight pages over six hundred in said volume, one-fourth of one cent per volume. And it is under-

stood that the foregoing prices apply only to the following classes of work, to-wit: to the composition and press work and binding of the public and private laws, documents, journals, Supreme Court reports, pamphlets of all kinds, including all copies for circulation of such laws as are required or allowed by law to be sent out and circulated, and the reports of all officers of the State, and of the various departments, and the penal and charitable institutions thereof. All other printing and press work and other similar work called for by the provisions of this contract is hereby classed and fixed as job work, and shall be charged and paid for as follows: The charges for setting type for each and every job of such work shall be computed at 32 cents per hour for the time taken by the compositor in the setting and arraging said job, and in distributing the type after the job is done, and the time to be allowed said compositor in doing said work shall be on the basis of the actual time in which a first-class journeyman printer could do said work in doing honest, faithful and prompt work.

"The press work on all of said job work shall be charged for at eleven cents for each token, except that in printing fertilizer tags, which come in gangs of eight, electros being furnished by the department, the charge shall be eight cents per thousand tags each impression.

"For doing any and all other kinds of job work, the prices for which are not herein specified, the amount to be charged and allowed therefor shall be at the usual customary rates charged by printers for such work, to be approved by said Commissioner of Labor and Printing as required by law. It is further understood, and agreed that in addition to all the provisions and requirements of this contract, the said Capital Printing Company is to do and perform all acts and things, duties and obligations required by law to be done and per-

formed in connection with said public printing, and in the manner and form required by law, and that the said Commissioner of Labor and printing shall have not only such power, authority and jurisdiction as are herein provided for, but also such as are given him by law.

"In witness whereof the said Capital Printing Company has caused these presents to be signed by its President, and caused its corporate seal to be hereto affixed, duly attested by its Secretary, and the members of said Joint Committee have hereto set their several signatures.

"And plaintiff agreed further by way of compromise to insert therein the following clause:

"It is particularly understood and agreed that all printing done under the provisions of this contract is to be done with type of standard size and face to insure first-class work, as may be designated by the head of each department, subdepartment, penal and charitable institution, except as herein specifically called for. The Senate and House Journals and documents, (except tabular or rule and figure work) are to be set in leaded small pica type, each page to be twenty-three pica ems wide, and forty-two pica ems long, including head and foot lines.

"The text of the public and private laws is to be set in leaded brevier type, each page to be twenty-two pica ems wide and forty-three pica ems long, and the side notes to be set in nonpareil type, five pica ems wide, and separated from the text by a three-to-pica lead.

"The text of the Supreme Court Reports (not reprint) is to be set in leaded small pica type, and the index and syllabus thereof to be set in leaded brevier, the width and length of the pages to be the same as those of the reports printed during the past two years."

The committee rejected each and all of the contracts

tendered by the plaintiff, and insisted on the execution of the one drawn and prepared by its attorney.

The plaintiff refused to sign that one. The facts set out in the fifteenth and sixteenth sections of the complaint show how the matter was concluded:

"15. That thereafter, to-wit, about 1 or 2 o'clock p. m., on March 7, 1899, said Joint Committee announced that they would at 4 o'clock p. m., on that day receive new bids for said public printing according to the terms and specifications of the paper writing set out in paragraph 11 above, but no advertisement of the same was made; that thereupon plaintiff declined to make any new bid, and forbade said Joint Committee to contract with any other person or firm for said public printing, or to let the same or any part thereof to any other person or firm; and forbade Edwards & Broughton and E. M. Uzzell to contract for or to do said public printing or any part thereof, and notified them that any contract which they might assume to make concerning same would be null and void and would be contested in the Courts.

"16 That there was no meeting of said Joint Committee for the reception of bids at the designated hour of 4 o'clock p. m., or at any other time on said day; but about said hour a resolution was introduced and passed by the House and Senate in words and figures as follows, to-wit:

RESOLUTION IN REGARD TO PUBLIC PRINTING.

*The House of Representatives, the Senate concurring, do Resolve,* That the Printing Committee appointed by this General Assembly be authorized to enter into a contract for the public printing in the form following, to-wit:

"This agreement, made and entered into this the... day of March, one thousand eight hundred and ninety-nine, by and between the State of North Carolina, through the Joint Com-

124—50

mittee on Printing, of the General Assembly, of the one part, said committee being thereto duly authorized by law, and Edwards & Broughton, a firm composed of C. B. Edwards and N. B. Broughton, and doing business in the city of Raleigh, said State, and E. M. Uzzell, also of said city of Raleigh, of the other part.

"Witnesseth: That the said Edwards & Broughton and E. M. Uzzell hereby undertake and agree, upon terms and conditions named in this contract, and at the prices hereinafter set forth, or provided for, accurately, promptly, and in good time and in a first-class, workmanlike manner, to do all the public printing, binding, job work, and all other similar work required and allowed by law to be done during the term of one year, ten months and fifteen days from the date of this contract, by the said State of North Carolina and for all the departments and sub-departments, and the penal and charitable institutions thereof, and to deliver the same in the city of Raleigh to the proper officers or departments, without cost of freight, expressage, drayage, or charges of any kind to said State, other than those set forth or provided for in this contract.

"And in consideration thereof, said State of North Carolina, through said Joint Committee on Printing, agrees that, upon the conditions named in this contract, and at the prices hereinafter set out or provided for, all printing, binding, job work and all other similar work required and allowed by law to be done during said term of one year, ten months and fifteen days from the date of this contract, for State and its departments, sub-departments and penal and charitable institutions, shall be done by the said Edwards & Broughton and E. M. Uzzell, and the same shall be paid for at the prices hereinafter named or provided for, and none other, and in the manner herein named and provided for; which said prices shall constitute the entire compensation of said Edwards &

Broughton and E. M. Uzzell, for doing all printing, binding, job work, and all other work necessary to be done by law or by the terms of this contract in connection with the public printing, including all cutting and trimming of paper, wrapping, packing and otherwise handling and distributing any and all of said work before and after the same is done, up to the delivery thereof, as provided for in this contract, to the proper officers or departments.

"It is understood and agreed that all bills against the State for said printing shall be made out and charged by the "quad em" and "token" except those for the job work, which shall be made out and charged as hereinafter specially set forth, and those for the binding shall be made out and charged per volume; and said bills, and all other bills for work done under the provisions of this contract, before being audited and paid, shall be approved by the Commissioner of Labor and Printing of said State, who shall, before approval, impartially examine the printing, binding and other work, and determine both the manner of its execution and the correctness of the accounts rendered for the same; and if said Commissioner of Labor and Printing shall ascertain that any of said printing or binding or other work done under the provisions of this contract are not done in the manner required by law, or called for by this contract, then he may reject the same, and decline to approve said bills or accounts; or, in lieu of complete rejection, he may deduct from said bills or accounts such sum or sums as he shall deem just and proper to be deducted therefrom for such failure.

"Said Edwards & Broughton, and E. M. Uzzell, in printing the reports of the State officers, and of the various State departments, and penal and charitable institutions, shall print of said reports the number of copies necessary for binding in the public documents, making the necessary changes in the

heads and folios of said reports, and for the copies so required for the public documents, said Edwards & Broughton and E. M. Uzzell shall be paid, in addition to the press work, only for changing the heads and folios aforesaid such amounts as said Commissioner of Labor and Printing may allow therefor.

"Said State of North Carolina shall furnish and deliver to said Edwards & Broughton, and E. M. Uzzell, at their places of business in the city of Raleigh, free of cost and expense, all paper of every kind, that for binding excepted, needed for use in doing the public printing and job work aforesaid.

"Said Edwards & Broughton and E. M. Uzzell shall furnish, free of cost to the State, except the prices allowed for binding, all amterial of every kind needed for use in doing all the binding called for by this contract.

"Said Edwards & Broughton, and E. M. Uzzell, shall make to said Commissioner of Labor and Printing each quarter during the term of this contract, commencing April 1, 1899, a written report, showing the amount of each quality and kind of paper that has been used during the preceding quarter in doing the public printing, and the amount of each quality and kind that may be on hand at the time of making such report.

"Said Edwards & Broughton, and E. M. Uzzell, agree to receive, store and properly care for, free of cost to said State, and honestly and faithfully use and account for, all paper and material of every kind, valuable manuscripts, books, original copies, and all other articles and things of value that may be delivered them for use in doing any of the public printing or other work provided for in this contract and to promptly return such manuscripts, books, original copies, and other articles or things of value to the proper officers or departments of said State, or of its penal or charitable institutions, and, at the termination of this contract, to promptly and faithfully account for and turn over to the proper authorities aforesaid

all paper, material of every kind, valuable manuscripts, original copies, books, and other articles or things of value that may be on hand, and belonging to said State, or to any of its said departments or institutions.

"It is understood and agreed that in printing the Supreme Court Reports, the said Edwards & Broughton, and E. M. Uzzell, shall print, bind and deliver the said Reports to the Secretary of State within ninety days from the time the manuscripts, or original copies, of such reports are turned over to said Edwards & Broughton, and E. M. Uzzell, for printing, and for failure to so deliver there shall be deducted by the Commissioner of Labor and Printing from the bills or accounts rendered by them for said work the sum of twenty-five dollars per day for each and every day's delay after said ninety days, which said sum is hereby agreed upon and stipulated and fixed as liquidated damages, in lieu of all actual damages, and for all inconvenience and annoyance that may be caused by such delay.

"It is further understood and agreed that said Edwards & Broughton, and E. M. Uzzell, shall have all the copies of the laws, documents and journals printed and bound (which are required to be bound under this contract, or by law) and delivered to the Secretary of State within ninety days after the adjournment of the present session of the General Assembly, and for failure to do so, there shall be deducted by said Commissioner of Labor and Printing from the bills or accounts rendered by them for said work the sum of fifty dollars for each and every day's delay thereafter, which said sum is hereby agreed upon and stipulated and fixed as liquidated damages, in lieu of all actual damages and for all inconvenience and annoyance caused by such delay.

The prices agreed upon and fixed, or otherwise provided for in this contract, for doing said printing and other work are as follows:

"For every one thousand ems of plain composition, thirty cents; for every one thousand ems of rule and figure work, sixty cents; for every token of two hundred and forty impressions of sixteen pages of press work, twenty cents; for law sheep binding, fifty cents per volume of six hundred pages; for half binding, twenty cents per volume of six hundred pages; for every forty-eight pages over six hundred in said volume, one cent per volume. And it is understood that the foregoing prices apply only to the following classes of work, to-wit: To the composition and press work and binding of the Public and Private Laws, Documents, Journals, Supreme Court Reports, pamphlets of all kinds, including all copies, for circulation, of such laws as are required or allowed by law to be sent out and circulated, and the reports of all officers of the State and of the various departments, and the penal and charitable institutions thereof. All other printing and press work and other similar work called for by the provisions of this contract is hereby classed and fixed as job work, and shall be charged and paid for as follows: The charges for setting type for each and every job of such work shall be computed at thirty cents per hour for the time taken by the compositor in setting or arranging said job, and the time to be allowed the said compositor in doing said work shall be on the basis of the actual time in which a first-class journeyman printer could do said work in doing honest, faithful and prompt work, which said price of thirty cents shall also pay for the distribution of said work. The press work on all of said job work shall be charged for at the rate of eighty cents for each one thousand impressions.

"For doing any other kinds of job work, the prices for which are not herein specified the amount to be charged and allowed therefor shall be at the usual customary rates charged by printers for such work, to be approved by said Commis-

sioner of Labor and Printing as required by law.   It is further understood that whenever one or more duplicates of any job work can and may be printed at the same impressions, the charges for the press work thereon shall be computed at twenty cents per token for each two hundred and forty sheets run through the press.   It is particularly understood and agreed that all printing done under the provisions of this contract is to be done with type of standard size and face to insure first-class work, as may be designated by the head of each department, sub-department, penal and charitable institutions, except as herein specifically called for.   The Senate and House Journals and documents, (except tabular or rule and figure work) are to be set in leaded small pica type, each page to be twenty-three pica ems wide, and forty-two pica ems long, including head and foot lines.   The text of the Public and Private Laws to be set in leaded brevier type, each page to be twenty-two pica ems wide and forty-three pica ems long, and the side notes to be set in nonpareil type, five pica ems wide, and separated from the text by a three-to-pica lead. The text of the Supreme Court Reports (not reprinted) is to be set in leaded small pica type, and the index and syllabus thereof to be set in leaded brevier, the width and length of the pages to be the same as those of the reports printed during the past two years.   It is further understood and agreed that, in addition to all the provisions and requirements of this contract, the said Edwards & Broughton and E. M. Uzzell are to do and perform all acts and things, duties and obligations, required by law to be done and performed in connection with said public printing, and in the manner and form required by law, and that the said Commissioner of Labor and Printing shall have not only such power, authority and jurisdiction as are herein provided for, but also such as are given him by law.

"In witness whereof said C. B. Edwards and N. B. Brough-
ton, the members of said firm of Edwards & Broughton, and
said E. M. Uzzell, have hereto set their hands and affixed their
seals, and the said Joint Committee have hereto signed their
names, the day and year first above written."

It is evident from what appears before us that the policy
adopted originally by the General Assembly of 1899, of put-
ting out the public printing to the lowest responsible bidder,
was abandoned when the joint resolution was adopted instruct-
ing the Committee to make the contract with Edwards &
Broughton and Uzzell at the prices named therein—the same
being the maximum prices named in the original bill.  It is
apparent upon the face of the record that the contract was
not made with the lowest responsible bidder.  When the con-
tract as it was executed is compared with the bid of the plain-
tiff company and the contract which it tendered no room is
left for doubt that the contract as executed was made with the
highest bidder.  The plaintiff company was a reliable estab-
lishment found to be so after a full investigation by the com-
mittee, and the bond tendered was declared by the committee
to be sufficient both in amount and as to security.  Its bid
was clear and distinct as to prices and it was unconditionally
accepted.  The terms of the bid were materially changed to
the disadvantage of the plaintiff company by the attorney who
was employed to reduce the bid and acceptance to writing in
the shape of a contract.  That can be seen by a reference to
the original Act, the bid of the plaintiff company and the
contract which was offered to be executed with the plaintiff.
Of course this Court knows nothing of these matters except
what appears in the record; nor are the reasons which caused
the change of policy on the part of the General Assembly
known to us.  While, as we have said, the plaintiff's bid was
clear in its terms as to prices—and the lowest bid made—

and was accepted by the committee, yet it was not of itself such a contract as the Act of Assembly required. The details as to character of type, times of delivery of the work and other such matters necessary to be put in a contract for the public printing were not specified in the plaintiff's bid, and these details were to be incorporated in the contract with the weightier matter of prices, and the plaintiff expected that to be done. In fact he offered a contract embracing all these matters fully and it was rejected.

However deeply the managers of the plaintiff company may feel aggrieved at the result there was no legal contract between the committee and the plaintiff. The committee's action was simply an acceptance of the plaintiff's bid to do the public printing. The Act of Assembly required that the committee should have the agreement reduced to writing and that was a most proper requirement. Both the committee and the plaintiff company knew that the agreement had to be reduced to writing before it could become such a contract as the General Assembly authorized the committee to make. Although the terms of contract may be entirely agreed upon by parties, yet if it is understood that it is to be reduced to writing as a part of the agreement, the contract is not complete until it is written and executed. 7 Am. and Eng. Enc. of Law, 140, and cases there cited. The Act of Assembly made the reduction of the agreement a condition precedent to the completion of the contract. And besides the complaint shows that the contract for the public printing was awarded by the committee in due form of law to Edwards & Broughton and Uzzell under a joint resolution of the General Assembly, and that they are doing the work. Our conclusion then is, as matter of law, that the plaintiff has stated no cause of action in the complaint against any of the parties. If the complaint had stated a cause of action against Edwards

& Broughton and Uzzell, yet, as it appears that a contract about the same matter has been executed and delivered to Edwards & Broughton and Uzzell, a mandamus could not issue against the other defendants, for that would be in effect annulling the contract by mandamus, which can not be done. Edwards & Broughton and Uzzell being in the possession of a contract for the public printing made under the forms of law, would be entitled to a trial of their rights according to the usual course of the law, by trial in open Court. *Detroit Free Press Co. v. Auditor,* 47 Mich., 145.

We have not gone into an elaborate discussion of the various law propositions discussed in the argument here, for the reason that the plaintiff in our opinion has no contract with the State for the public printing. That the agreement between the plaintiff and the committee was only an acceptance of the bid of the plaintiff, and that the contract required by the Act of Assembly was a contract to be reduced to writing, signed by the parties and delivered. Whether the action was one against the State, it is not necessary to decide. The judgment of the Court below is affirmed.

Affirmed.

CLARK, J., concurring. I concur in the decision not only for the reason given in the opinion of the Court that the contract was not reduced to writing as required by the statute, but because if it had been the condition of the plaintiff would have been no better, since in no aspect could the action be maintained, the complaint not stating a cause of action and the Court having no jurisdiction. Clearly the remedy asked of a mandamus to the defendants to compel them to sign and deliver the contract could not be entertained, for they had no part in the transaction, and their signatures if affixed would have no validity, except as a legislative committee acting by authority of and in behalf of the Legislature, and the

Court could issue no mandamus to compel that body to perform any act or to compel its committee to act after the General Assembly, as in this case, had by statute revoked the committee's authority to sign the contract with the plaintiff, by directing them to sign a contract for the printing with another party. Even if the contract had been signed and delivered, the contract drafted by plaintiff for signature by the committee and that afterwards signed by them and delivered to Edwards & Broughton both recite that it is a contract "between the State of North Carolina, through the joint committee on printing of the General Assembly of the one part" and the printers named, of the second part. As the Legislature subsequently by legislative act directed the committee to make a contract with Edwards & Broughton, even if a valid contract had been perfected with the plaintiff, no Court, State or Federal, could render a judgment compelling the State to perform the contract with the plaintiff. Indeed such order for specific performance could be entered against no one for breach of such contract, but the remedy is an action for damages, which in the case of the State must be sought by petition in this Court (Const. Art. IV, Section 9), and in the case of other than the State, in the lower Court. Neither in such cases would an injunction lie, as asked in this case, by the first contractor against the second. There being a remedy at law equitable relief could not be granted.

A somewhat similar case was *Clements v. The State,* 77 N. C., 143, except that in that case the contract broken by the State had been duly made and perfected. The authorities are referred to in the most recent case in regard to actions against the State. *Garner v. Worth,* 122 N. C., 250.